**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DESIREE REYES, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>EXTRA SPACE STORAGE, INC.,<br>EXTRA SPACE MANAGEMENT INC.<br>EXTRA SPACE STORAGE LP,<br><br>Defendant. | Case No. 6:26-cv-06494-EAW<br>Hon. Elizabeth A. Wolford |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12 (c), TO COMPEL ARBITRATION, AND STRIKE MATERIALS FROM THE PLEADINGS**

**GERBER CIANO KELLY BRADY LLP**
Richard J. Zielinski
Daniel W. Gerber
Dominick F. Roa
*Attorneys for Defendant*
P.O. Box 1060
Buffalo, New York 14201
Tel.: 716-306-6593
rzielinski@gerberciano.com
dgerber@gerberciano.com
droa@gerberciano.com

**EXHIBITS**

The exhibits referenced herein are appended to the Declarations of Richard J. Zielinski, Esq., and Dereck Conway, in support of this motion to dismiss the Plaintiff's Complaint against Defendants Extra Space Storage, Inc. ("ESSI") and Extra Space Storage LP ("ESSLP") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure; to compel arbitration pursuant to Federal Arbitration Act, 9 U.S.C. §§ 2-4, staying the instant action pending such resolution; and to Strike certain immaterial portions of the Complaint which incite prejudice against all defendants pursuant to Fed. R. Civ. P. 12(f).

**PROCEDURAL HISTORY**

On or about April 30, 2026, Plaintiff Desiree Reyes ("Plaintiff") commenced the instant class action litigation with the filing of a Class Action Complaint (the "Complaint") against Defendant Extra Space Storage Inc. ("ESSI") in the U.S. District Court, Western District of New York. (Dkt No. 1).

On or about June 17, 2026, this Court granted ESSI's motion for an extension of time of July 17, 2026 to answer or otherwise respond to the Complaint. (Dkt. No. 6).

On or about June 29, 2026, ESSI invoked the arbitration provision of Plaintiff's Rental Agreement and served Plaintiff with its first demand to resolve this dispute through arbitration before the American Arbitration Association ("AAA") pursuant to the terms of Plaintiff's terms of Plaintiff's Rental Storage Agreement. *See* Zielinski Decl. Ex A. Plaintiff did not object to the AAA designation, arbitration, or arbitrability. Plaintiff also did not contest the validity of the agreement or its terms.

On or about July 17, 2026 Defendant ESSI filed a Motion to Dismiss the Complaint or, in the alternative, to compel arbitration. (Dkt No. 10).

On or about July 31, 2026, this Court granted the parties' consent motion extending Plaintiff's time to respond to the Defendant's Motion. (Dkt. No. 18).

On August 7, 2026, Plaintiff filed an Amended Complaint naming two additional Defendants, Extra Space Management Inc. ("ESSMI") and ESSLP. (Dkt. No. 20).

On August 11, 2026, This Court issued an Order denying Defendant's motion to dismiss as moot in light of Plaintiff filing an Amended Complaint. (Dkt. No. 23).

On August 17, 2026, the Defendants sent correspondence to Plaintiff by counsel once again designating the AAA as the proper arbitral forum for resolving this dispute and providing five (5) additional days to accept or propose a different arbitral forum. Defense counsel sent the correspondence by email and U.S. Mail. *See* Zielinski Decl. Ex B.

As before, Plaintiff did not object to the AAA designation, arbitration, or arbitrability. Plaintiff also did not contest the validity of the agreement or its terms.

On August 18, 2026, the parties submitted a joint proposed briefing schedule for the instant motions after discussing the various motions during a conference call the prior day. (Dkt. No. 27).

On August 20, 2026, this Court granted and adopted the joint proposed briefing schedule, which set a deadline of September 11, 2026 for Defendant's to file the instant motion. (Dkt. No. 28).

As Plaintiff did not dispute the AAA designation or propose a different arbitral forum within the five days allotted, the Defendants then filed a demand for arbitration with the AAA

pursuant to the arbitration provision agreed upon by all parties on August 25, 2026. *See* Zielinski Decl. Ex C.

On August 28, 2026, Defendants filed an Answer to Plaintiff's Amended Complaint in order to avoid default, raising various affirmative defenses. (Dkt. No. 30).

**FACTUAL BACKGROUND**

On or about October 22, 2024, Plaintiff, Desiree Reyes, ("Plaintiff") accessed the Extra Space website and solicited a rental agreement permitting her to lease a storage space that was managed by Defendant ("ESSMI") at the facilities located at 3635 Berry Fields Rd., Geneva NY 14456 (the "Storage Agreement"). *See* Ex. D.

Plaintiff expressly agreed that any dispute relating to her lease of the storage space at 3635 Berry Fields Rd., Geneva, NY 14456 be resolved through binding arbitration on an individual basis and not on a class-wide or representative basis. Conway Decl. at ¶¶ 10-12, 15-16; Ex. D at ¶ 7.

In furtherance of securing a lease for storage space at the facility located at 3635 Berry Fields Rd., Geneva NY 14456, Plaintiff contacted Extra Space Management, Inc. through its website. Plaintiff used the website to make decisions and answer questions in negotiating her lease. Plaintiff answered "No" under the section asking, "Is the Customer or Customer's spouse a service member in the military." Ex. D at p.8. When prompted regarding the inclusion of an arbitration provision that would require all disputes to be resolved by binding arbitration on an individual basis, Plaintiff agreed. Ex D at ¶ 7. Plaintiff thereby explicitly agreed to arbitrate all Claims and Disputes, which includes claims at law or in equity relating in any way to the Rental Agreement and the enforcement of any remedy under any law, statute, or regulation. Ex. D at ¶ 7; Conway Decl. at ¶ 10-16. The terms of the agreement are as follows:

**By initialing below, Customer agrees that, either Customer or Operator may elect to resolve any dispute by neutral, binding arbitration, on an individual basis only, and not by a court action, subject to the exceptions and terms set forth below.**

**Customer acknowledges that he/she had the option of entering into an Agreement without an Arbitration provision but voluntarily chose to enter into an Agreement with an Arbitration provision.**

**Except as provided below, Operator and Customer agree to arbitrate all Claims and Disputes between Operator and Customer.**

**"Claims" are any claims or controversies, at law or in equity, against each other related in any way to or arising out of in any way to this Rental Agreement, the Customer's use or occupancy of the Space and this Property or any claim of bodily injury or property damage, or the enforcement of any remedy under any law, ordinance, statute or regulation, even if it arises after the Agreement has terminated. "Claims" include, but are not limited to, claims related in any way to or arising out of in any way to any aspect of the relationship between Operator and Customer, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory. "Claims" also include such claims that Customer brings against Operator's employees, agents, parents, subsidiaries, affiliates, or other representatives or that Operator brings against Customer.**

**"Disputes" include without limitation disputes arising out of relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge. Unless Customer and Operator each agree otherwise, the Arbitration will be conducted by a single, neutral third party arbitrator.**

**OPERATOR AND CUSTOMER WAIVE THEIR RIGHT TO TRIAL BY JURY OR IN A COURT. The party initiating the arbitration shall select the arbitration organization, subject to the other party's agreement to use such arbitration organization, which shall not**

> **unreasonably be withheld. Unless otherwise agreed, the arbitration shall take place within the County where the defendant/respondent resides. The applicable rules of the arbitration organization will govern the arbitration. For Claims that do not exceed the jurisdictional limit of small claims court, Operator and Customer agree to bring such Claims in small claims court instead of arbitration, and the rules of the small claims court shall apply. If the Claim does not qualify to be brought in small claims court, Operator will pay for the arbitration administrative or filing fees, including the arbitrator fees, up to an aggregate total of $2,500.**
>
> **OPERATOR AND CUSTOMER AGREE THAT THEY WILL ONLY PURSUE ARBITRATION ON AN INDIVIDUAL BASIS AND WILL NOT PURSUE ARBITRATION OR ANY OTHER CLAIM ON A CLASS-WIDE, REPRESENTATIVE, OR CONSOLIDATED BASIS. OPERATOR AND CUSTOMER ALSO AGREE THAT THEY WILL NOT PARTICIPATE AS A MEMBER OF A CLASS, AS A CLASS REPRESENTATIVE, OR IN A CONSOLIDATED ACTION.**
>
> **The right to arbitration under this Arbitration Provision is protected by, and any arbitration shall be governed by, the Federal Arbitration Act (9 U.S.C. §1 et seq.). The Operator and Customer agree that the Operator's business and the relationship here involve interstate commerce.**
>
> **Claims Not Subject to Arbitration. In the event applicable law prohibits the arbitration of certain specified Claims, such Claims shall not be subject to this Section. Operator retains the right to pursue any eviction, action to enforce a lien and/or unlawful detainer remedies in any court. Operator retains the right to conduct a lien sale.**

Ex. D at p. 10-11, ¶ 7. Plaintiff agreed to the above provision on October 22, 2024 by affirmatively placing an "X" on her application indicating that she "agrees to the Arbitration Provision" and affixing her initials in a Green Box directly underneath the provision. Ex. D at p.11; Conway Decl. at ¶ 16.

After Plaintiff agreed to these terms, she paid her first month rent using a Visa Card. Conway Decl. at ¶ 17. However, she failed to remit any further payments. Conway Decl. at ¶ 17.; Conway Ex. 3.

Defendants did not receive notice of any dispute relating to Plaintiff's property until receiving the instant suit. Plaintiff brings this class action lawsuit claiming that Defendants acted in violation of 50 U.S.C. § 3958 of the Servicemember Civil Relief Act (SCRA). Ex. E. Defendants promptly sent correspondence to Plaintiff via counsel of record requesting arbitration and designating an arbitration organization. Ex. A.

Plaintiff has admitted that the subject agreement is true and accurate in her contemporaneous motion seeking enforcement of this Court's Scheduling Order. Dkt. No. 31, p. 20 (Bromberg Decl., ¶ 11). In the motion, Plaintiff does not contest the validity of the contract, its terms, or that all such terms are binding. *See* Dkt. No. 31. Furthermore, in the Amended Complaint, Plaintiff does not contest the binding agreement or its terms. In fact, Plaintiff relies on the agreement as an exhibit arguing for alter ego liability. (Dkt. No. 20).

This action must be dismissed against ESSI and ESSLP, as neither of those entities own, operate, or manage the subject storage facilities. Neither ESSI nor ESSLP were involved in any of the allegations raised in the Amended Complaint relating to the possession and sale of Plaintiff's property. Furthermore, any dispute relating to the disposal of the Plaintiff's property must be resolved through individual binding arbitration in accordance with her Rental Agreement, which Plaintiff does not dispute. Therefore, this lawsuit must be stayed pending the resolution of binding arbitration. Furthermore, because Plaintiff voluntarily waived her right to assert class action claims against Defendant in arbitration, it must proceed on an individual basis. Finally, Plaintiff's allegations contained in ¶ 15 are highly improper as they raise irrelevant material that could never

be admissible in the instant action having no bearing on the instant dispute and would only serve to cause significant prejudice to the Defendants if the allegations were permitted to remain in the Complaint.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS AGAINST ESSI AND ESSLP SHOULD BE DISMISSED IN THEIR ENTIRETY

#### a. ESSI and ESSLP do not own, operate, or manage the Storage Facility in which Plaintiff stored her belongings.

ESSI and ESSLP are not proper parties to this litigation. The Rental Agreement, which Plaintiff references in her Amended Complaint, was executed by Defendant ESSMI. ESSI and ESSLP are separate and distinct legal entities that constitute parent companies. Neither ESSI nor ESSLP own, direct, operate, control, supervise, or manage the storage facilities located at Berry Fields Rd., Geneva NY 14456. Conway Decl. at ¶¶ 4-7 Conway Ex. 1. Therefore, neither ESSI nor ESSLP ever took possession of the Plaintiff's property; never held or enforced a lien on the Plaintiff's property; and never sold, auctioned, or otherwise disposed of the Plaintiff's property. Conway Decl. at ¶¶ 8-9.

Plaintiff's own Amended Complaint establishes that ESSI and ESSLP are separate and distinct entities who had no involvement in the actions giving rise to the underlying dispute. As addressed further below, ESSI's SEC filings, which are referenced and relied upon by Plaintiff in the Amended Complaint, establish the separate and distinct legal entities who are affiliated.

Because neither ESSI nor ESSLP own, manage, or operate the storage facilities where Plaintiff placed her personal property, they cannot be found to have ever possessed them. Furthermore, as ESSI and ESSLP never possessed the Plaintiff's property, they could not have ever dispossessed

the property. The claims and allegations in Plaintiff's Amended Complaint therefore cannot give rise to liability for against ESSI and ESSLP, and therefore, Plaintiff has no claim against those Defendants. Dismissal of the Amended Complaint against ESSI and ESSLP is appropriate under rule 12(c).

**b. The Amended Complaint fails to state a claim for Alter Ego Liability of ESSI and ESSLP**

To get around the fact that ESSI and ESSLP are separate legal entities, who are not signatories to the agreement with Plaintiff and who do not own, operate, control, etc., the subject storage facilities, Plaintiff attempts to allege that ESSMI is an "alter-ego" of ESSI and/or ESSLP. For the reasons explained below, the allegations in the Amended Complaint are wholly insufficient to state a claim for alter-ego liability against ESSI and ESSLP. Ex E at ¶16.

New York law recognizes that owners of a corporation are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of corporate owners. *Sutton 58 Assocs. LLC v. Pilevsky*, 189 A.D.3d (1st Dept. 2020). New York courts, therefore, generally disfavor disregard of the corporate form. *Id.* The alter-ego doctrine, however, supplies a "narrow exception" to the general rule disfavoring disregard of the corporate form. *Mannucci v. Cabrini Med Ctr. (In re Cabrini Med. Ctr.)*, 489 B.R. 7, 16 (S.D.N.Y 2012).

Under New York Law, to state a claim for alter ego liability, the complaint must contain "allegations of complete dominion over a corporation, or other entity, which was used to commit a wrong against the plaintiff thereby causing injury to the plaintiff." *S.M. v. Madura*, 223 A.D.3d 486, 487 (1st Dept. 2024). Allegations of "complete domination of a corporation alone would not be enough to warrant piercing the corporate veil." *Anhui Konka Green Lighting Co., v. Green*

*Logic Led Elec. Supply*, 2021 U.S. Dist. LEXIS 178815, *15 (S.D.N.Y. 2021); *TheEcheck.com, LLC v. NEMC Fin. Servs., Grp. Inc.*, 2017 U.S. Dist. LEXIS 93143, *8 (S.D.N.Y 2017); *Apace Communs., Ltd. v. Burke*, 522 F. Supp. 2d 509, 522 (W.D.N.Y. 2007); *Cornwall Mgt. Ltd. v. Kambolin*, 140 A.D.3d 507, 507 (1st Dept. 2016) (bare allegations that defendants "controlled and dominated" corporation "are insufficient to state a cause of action for alter ego liability."); *EED Holdings v. Palmer Johnson Acquisition Corp.,* 387 F.Supp.2d 265, 274 (S.D.N.Y. 2004) ("To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim").

Moreover, even under the liberal notice pleading standard, purely "conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability." *Apace Communs., Ltd.*, F. Supp. 2d 509 at 521; *In re Currency Conversion Fee Antitrust Litig.,* 265 F.Supp.2d 385, 426 (S.D.N.Y. 2003); *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir. 1996) (complaint failed to allege "specific facts" supporting claim that fraudulent actions taken by corporate subsidiary's employees were "caused by, known to and ratified by" parent corporation, and claims against parent were therefore properly dismissed); *Shenango Inc. v. American Coal Sales Co.,* No. 2:06-cv-149, 2007 U.S. Dist. LEXIS 58110, *13 (W.D.Pa. Aug. 9, 2007) ("averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly,* such averments cannot support a veil-piercing claim"); *Metropolitan Transp. Auth. v. Triumph Advertising Productions, Inc.,* 116 A.D.2d 526, 497 N.Y.S.2d 673 (1st Dept. 1986) (conclusory allegations that corporate structure is a sham are insufficient to warrant piercing corporate veil).

To avoid dismissal at the pleading stage, a complaint must "allege facts sufficient to suggest how Defendant's complete domination and control of the corporate form served to perpetuate a

wrong against the Plaintiff." *Anhui Konka Green Lighting Co.*, 2021 U.S. Dist. LEXIS 178815 at *15; *TMCC, Inc v. Jeniffer Convertibles, Inc.*, 176 A.D.3d 1135 (2d Dept. 2019) (Complaint dismissed because it was "devoid of any allegations as to how [defendant] used its domination [of its subsidiary] to commit a wrong against plaintiffs"); *Weiss v. All Year Holdings, Ltd.*, 648 B.R. 434, 446 (S.D.N.Y. 2022) ("the lack of any such allegations renders the Amended Complaint fatally deficient.").

Here, Plaintiff's amended complaint does not adequately plead that ESSI or ESSLP had "complete dominion" over ESSMI and is devoid of any allegations as to *how* ESSI or ESSLP used any alleged dominion of ESSMI to commit a wrong against Plaintiff. She instead relies on conclusory collective allegations naming the separate Defendants collectively as "Defendants" or "Extra Space" and not distinguishing any allegations among them in relation to the allegations giving rise to her causes of action. Plaintiff's Amended Complaint at ¶ 16.

With respect to dominion, the Amended Complaint alleges, among other things, that ESSMI and ESSI shared the same principles and address. Ex E. at ¶¶ 5-6. However, allegations "establishing that entities have a close relationship, such as 'having the same principal executive offices, sharing identical management teams, and have almost identical principals' are not enough to meet the pleading threshold to state an alter ego claim…" *Fin Tech. Partners LP v. Circle Internet Fin. Ltd.*, 2024 U.S. Dist. LEXIS 210458, *16 (S.D.N.Y. 2024). The Amended Complaint further alleges that in an SEC filing, ESSI included ESSMI as a "Significant Subsidiary" and that "ESSI also stated that ESSI or ESSLP owns each Significant Subsidiary directly or indirectly." These allegations are, likewise, insufficient to allege a basis to pierce the corporate veil. Ex E. at ¶ 9. *Miami Prods. & Chem. Co. v. Olin Corp.*, 449 F.Supp.3d 136, 173 (W.D.N.Y. 2020); *Spagnola v. Chubb Corp.*, 264 F.R.D., 76, 87 (S.D.N.Y. 2010) ("[C]ourts routinely refuse to pierce the

corporate veil based on allegations limited to the existence of shares office space or overlapping management, allegations that one company is the wholly owned subsidiary of another, or that companies are to be considered as a whole.").

Plaintiff refers to ESSI's SEC filings to support the allegation of alter ego liability, but in so doing instead defeats her own claim. (Dkt. No. 20, ¶¶ 3-12). The SEC filings depict a properly and legally organized corporate structure of a Real Estate Investment Trust. The filing specifies the complex corporate structure and multiple distinct forms of operation and revenue generating, establishing the distinction between the three named Defendants. (the "2025 10-K", p. 1-10). The filing also identifies the differing taxation status for the various corporate entities

Furthermore, the Amended Complaint contains no allegations that either ESSI or ESSLP exercised their alleged dominion and control over EMSI in a way that caused EMSI's employees to dispossess Plaintiff of the personal property that she kept at the storage facilities. *De Jesus v.,* 87 F.3d at 70 (2d Cir. 1996) (complaint failed to allege "specific facts" supporting claim that fraudulent actions taken by corporate subsidiary's employees were "caused by, known to and ratified by" parent corporation, and claims against parent were therefore properly dismissed.). Nor does the Complaint contain any allegations as to *how* ESSI or ESLP's used the alleged control and domination over EMSI to commit a wrong against Plaintiff. The lack of any such allegations renders the Amended Complaint deficient. *Anhui Konka Green Lighting Co.*, 2021 U.S. Dist. LEXIS 178815 at *15; *TMCC, Inc*, 176 A.D.3d 1135 (2d Dept. 2019) (Complaint dismissed because it was "devoid of any allegations as to how [defendant] used its domination [of its subsidiary] to commit a wrong against plaintiffs"); *Weiss v. All Year Holdings, Ltd.*, 648 B.R. at 446. Indeed, there is no allegation that ESSI or ESSLP had any control over how ESMI manages

the storage facilities in question or that they directed ESSMI's employees to dispossess Plaintiff of her personal property.

Based on the foregoing, Plaintiff's Amended Complaint entirely lacking in allegations, even if taken as true, to give rise to alter-ego liability on the part of ESSI and ESSLP.

## II. PLAINTIFF SHOULD BE COMPELLED TO ARBITRATION ON AN INDIVIDUAL BASIS

### a. Plaintiff's Claims Must Proceed Through Arbitration on an Individual Basis

Plaintiff's causes of action as alleged in the Complaint, must be resolved through arbitration pursuant to the express terms of her Storage Agreement. Ex. D. Under the Federal Arbitration Act (FAA), a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court's precedents "place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as embodying a national policy favoring arbitration, and a liberal federal policy favoring arbitration agreements . . . ." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (citation omitted). "[C]consistent with [the] text [of the FAA], courts must 'rigorously enforce' arbitration agreements according to their terms," *Am. Express Co. v Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Also, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Once the party moving to compel arbitration makes a *prima facie* showing that an agreement to arbitrate exists, the burden shifts to the party resisting arbitration to show (i) that he or she did not agree to the arbitration provision, or that the arbitration provision is otherwise invalid or unenforceable, or (ii) that the arbitration provision does not encompass his or her claims. *See In*

*re Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y.2014), *aff'd*, 633 F. App'x 544 (2d Cir. 2015) ("Whether it argues that arbitration is improper because 'the arbitration agreement is invalid under a defense to contract formation,' or asserts that 'the arbitration contract does not encompass the claims at issue,' either way, the resisting party shoulders the burden of proving its defense."); *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid") (*citing Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

On a motion to compel arbitration, the Court applies a summary judgment standard to those questions, under which the party resisting arbitration must prove that there is a genuine issue of material fact. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997); 9 U.S.C. § 4. "[T]he party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995).

Here, there is no genuine issue of fact as to whether Plaintiff elected to submit claims and disputes to binding arbitration on an individual basis, or whether the agreement is valid and enforceable. Plaintiff unambiguously agreed to the terms of the arbitration provision by affirmatively placing an "X" on her application indicating that she "agrees to the Arbitration Provision." Ex D at p.11. Moreover, she placed her initials directly next to this section. Id. This agreement is valid and binding as a matter of law. *Coe v. Coca-Cola Co.*, 702 F. Supp. 3d 140, 157 (W.D.N.Y. 2023) (Court enforcing arbitration provision and staying case where Plaintiff "unambiguously manifested his assent to those terms" by "checking the box" agreeing to the agreement's Terms of use.); *Getz v. Verizon Communs, Inc.*, 2018 U.S. Dist. LEXIS 182590

(S.D.N.Y. 2018); *Meyer v Uber Tech., Inc.*, 868 F.3d 66*,* 75-79 (2d Cir. 2017); *Whitt v. Prosper Funding LLC,* No. 15-cv-136-GHW, 2015 WL 4254062, at *1, *4 (S.D.N.Y. July 14, 2015) (Court staying case and enforcing agreement to arbitrate contained in borrower registration agreement when borrower was required to click a box adjacent to text that stated "Clicking the box below constitutes your acceptance . . . of the borrower registration agreement"; the borrower registration agreement was "conspicuously rendered as a hyperlink to the Agreement itself" and borrower "could not complete a loan application without clicking the box indicating acceptance of the Agreement"); *Zaltz v. JDate*, 952 F. Supp. 2d 439, 451 (E.D.N.Y. 2013) (plaintiff accepted terms of agreement where it was "clear that in order to have obtained a JDate.com account . . . plaintiff clicked the box confirming that she had both read and agreed to the website's Terms and Conditions of Service . . . even though she does not recall the specific terms at this time").

Any argument attacking the enforceability of the arbitration agreement would be meritless as Plaintiff has specifically alleged and agreed that she entered into the subject Storage Agreement and placed her belongings in the subject storage facility. Furthermore, the SCRA and its amendment contain no provisions prohibiting resolution by arbitration or excepting any alleged violations from arbitration under the FAA. In fact, the SCRA does not mention any prohibition or limitation on arbitration. 50 U.S.C. 3958 *et. seq.* Any statutory override of the FAA's instruction to enforce arbitration must be clearly expressed in the statute as Congress has done so on other occasions. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 514 (2018) (stating "when Congress wants to mandate particular dispute resolution procedures it knows exactly how to do so. Congress has spoken often and clearly to the procedures for resolving "actions," "claims," "charges," and "cases" in statute after statute. *E.g.,* 29 U. S. C. §§216(b), 626; 42 U. S. C. §§2000e-5(b), (f)(3)-(5). Congress has likewise shown that it knows how to override the Arbitration Act when it

wishes—by explaining, for example, that, "[n]otwithstanding any other provision of law, . . . arbitration may be used . . . only if" certain conditions are met, 15 U. S. C. §1226(a)(2); or that "[n]o predispute arbitration agreement shall be valid or enforceable" in other circumstances, 7 U. S. C. §26(n)(2); 12 U. S. C. §5567(d)(2)).

**b. <u>The SCRA Does Not Prohibit Arbitration Provisions That Waive Class Claims</u>**

The SCRA contains no language mandating that claimed violations of the SCRA must be adjudicated by a court of competent jurisdiction, nor does the SCRA contain any prohibits or limitations of the enforcement of arbitration clauses. While the Second Circuit has not addressed the arbitrability of SCRA claims, the Fourth Circuit Court of Appeals has thoroughly analyzed the issue and upheld the enforcement of an arbitration agreement relative to a claimed violation of the SCRA. *Espin v. Citibank, N.A.*, 126 F.4th 1010, 1018 (4th Cir. 2025).

The *Espin* Court reminded that the "Supreme Court has concluded that arbitration agreements are enforceable "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Espin v. Citibank, N.A.*, 126 F.4th 1010, 1016 (4th Cir. 2025) (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2021)). Further, the *Espin* Court concluded that the Supreme Court has "never concluded that a federal statute overrode the enforcement of arbitration agreements under the FAA without explicitly saying so." *Id*. at 1016-17 (citing *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 516 (2018)). Ultimately, the *Espin* Court found that the plaintiffs there did agree to arbitration and the FAA binds them to the agreement because "the Supreme Court has concluded that, unless they do so explicitly, federal statutory remedies do not override agreements to arbitrate." *Espin*, *supra*, at 1017.

In Plaintiff's reply papers on her motion to enforce the Court's Scheduling Order, she admits that the *Espin* Court addressed the construction of a federal statute, the SCRA. Though a Fourth Circuit case, *Espin* provides thorough analysis of the question of statutory construction: whether the SCRA prohibits an agreement to submit a claimed violation of the statute to arbitration on a solitary basis. The *Espin* Court did not answer a question of public policy or state law. It applied controlling United States Supreme Court precedent to evaluate the language of the statute and found that the SCRA does not prohibit an arbitration provision with a class waiver. *Espin* at 1018-19. The *Espin* Court noted that the class of plaintiffs in that action ineffectively argued that the waiver of class claims in arbitration violated the terms of 50 U.S.C. § 4042(a)(3). By the clear terms of the statute, § 4042(a)(3) does not address arbitration, and therefore it does not prohibit a waiver of class claims in arbitration. *Espin* at 1019.

Thus, the SCRA does not prohibit arbitration of alleged violations, and this matter must proceed in arbitration.

**c. <u>Defendants Asserted Their Right to Arbitrate the Plaintiff's Claims From The Outset and Are Entitled to Arbitration</u>**

Each of the three separate defendants have maintained their intent on exercising their right to resolve the instant matter in arbitration from the outset. Any claim to the contrary is belied by the record and Plaintiff's own filings before this Court.

Plaintiff's motion to enforce the Scheduling Order and for an injunction at Docket No. 31 and reply at Docket No. 38 both admit to the separate Defendants' continued efforts to have the underlying issue resolved through arbitration as agreed upon by the parties. In fact, the selection of arbitration was the precipitating reason for Plaintiff filing the motion to enforce on August 28, 2026 in the first place. In her reply papers, Plaintiff admits that the Defendants sent multiple

demands to arbitrate, previously moved to compel arbitration, and then submitted a joint briefing schedule to compel arbitration. Docket No. 38.

As addressed above, the Defendants served multiple demands to Plaintiff designating the AAA as the proper forum for this dispute. Upon not receiving any objection or communication in opposition, the Defendants filed for arbitration with the AAA pursuant to the terms of the Agreement. Defendants exercised their contractual rights expressly with the intention to preserve the right to arbitrate and to proceed in that forum, which was not objected to by the Plaintiff.

Any claim that the Defendants waived their right to arbitrate is therefore baseless and should be disregarded by this Court. Plaintiff cannot in one motion argue that the Defendants are in violation of this Court's briefing schedule for enforcing its contractual rights and preserving arbitration and then argue in opposition here that Defendants did not preserve arbitration and enforce its contractual rights. Such an argument would be disingenuous.

**d. <u>Both Parties Benefit from Arbitration</u>**

Parties routinely enter into arbitration agreements for various reasons including to avoid the potentially significant costs and delays that may accompany litigation. Both parties here stand to benefit from their previously agreed upon arrangement for that exact reason. Any suggestion of "forum shopping" is a misplaced and an attempt to cast dispersions on the Defendants who provided the Plaintiff with the right to pursue resolution in a timely and cost-effective manner through arbitration. The significant cost saving measures are evidenced within the arbitration provision of the agreement. The agreement provides that Operator (ESMI) will pay for the arbitration administrative or filing fees, including the arbitrator fees, up to an aggregate total of $2,500. The agreement also includes that the arbitration will be conducted by a single, neutral

third party arbitrator as opposed to a panel of arbitrators, which will also ease the costs and demands of resolving the instant dispute.

As the Plaintiff has agreed to binding individual arbitration of her claims, the FAA mandates that the agreement to arbitrate be enforced. Therefore, Plaintiff's claims must proceed through arbitration on an individual basis.

### III. PARAGRAPH 15 OF THE PLAINTIFF'S AMENDED COMPLAINT MUST BE STRICKEN AS IT CONTAINS SUBSTANTIALLY PREJUDICIAL ALLEGATIONS THAT HAVE NO POSSIBLE RELATION OR LOGICAL CONNECTION TO THIS MATTER

Paragraph 15 of the Plaintiff's Amended Complaint refers to unrelated litigation and a resulting settlement agreement that is significantly prejudicial to the defendant and immaterial to the instant action. The paragraph, its allegations, and the referenced documents/websites must therefore be stricken pursuant to Fed. R. Civ. P. 12(f).

Under Federal Rule of Civil Procedure 12(f), a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter". Fed. R. Civ. P. 12(f). On a motion to strike, the moving party must show "that (1) no evidence in support of the allegation would be admissible; (2) the allegation has no bearing on relevant issues; and (3) allowing the allegation to stand would result in prejudice to the movant." *Adams v. Northstar Location Servs., LLC*, 2010 US Dist LEXIS 106187, at *22-*23 (W.D.N.Y. 2010) *citing Hargett v. Metro. Transit Auth*., 552 F. Supp. 2d 393, 404 (S.D.N.Y. 2008). Resolution of a Rule 12(f) motion is left to the District Court's discretion. *E.E.O.C. v. Bay Ridge Toyota, Inc*., 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004).

Evidence of a party's settlements and negotiations may support a motion to strike where they had no bearing on the claims in the case and they would cause significant prejudice.

*Northwestern Mut. Life Ins. Co. v. Wender*, 940 F. Supp. 62 (S.D.N.Y. 1996); *Corr. Officers Benevolent Assn. v. Kralik*, 226 F.R.D. 175 (S.D.N.Y. 2005).

In *Northwestern Mut. Life Ins. Co. v. Wender*, 940 F. Supp. 62 (S.D.N.Y. 1996), the Plaintiff moved to strike a paragraph in a defendant's answer for stating facts regarding settlement negotiations between the parties, which are precluded by Fed. R. Evid. 408. As the statements are inadmissible, striking them from the pleading was appropriate. *Northwestern Mut. Life Ins. Co. v. Wender*, 940 F. Supp. 62, 67 (S.D.N.Y. 1996).

In *Corr. Officers Benevolent Assn. v. Kralik*, 226 F.R.D. 175 (S.D.N.Y. 2005), the Plaintiff attached exhibits to its complaint in conjunction with allegations relating to a prior lawsuit settlement, and a related order and stipulation. *Id.*at 176-77. The Court found that the allegations and exhibits were clearly irrelevant to the case as "[p]rior settlement agreements, no matter how similar the litigation, are irrelevant to this case or the facts giving rise thereto." *Id.* at 177.

Similarly here Plaintiff alleges a settlement agreement involving the Defendants that relates to unsubstantiated allegations of deceptive pricing practices that have no bearing on the instant dispute: whether the Defendants violated the SCRA. Plaintiff's allegations in ¶ 15 also include links to two websites discussing the settlement. These allegations and websites are immaterial to the instant action and could not be relevant or admissible under Fed. R. Evid. 402 & 403. The substantial prejudice to the Defendants cannot be overstated given that the reports and allegations identify claims against the Defendants that were not supported or proven. The allegations also include the value of the settlement which would necessarily prejudice the Defendants in the instant litigation raising an inference of wrongdoing in the instant and completely unrelated action.

Therefore, because the allegations and reference material in ¶ 15 of the Plaintiff's Amended Complaint is immaterial, inadmissible and would cause the Defendants substantial prejudice, it should be stricken from the Amended Complaint.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Plaintiff's Complaint against Defendants ESSI and ESSLP and grant this motion to compel arbitration pursuant to Federal Arbitration Act, 9 U.S.C. §§ 2-4, stay the instant action pending such resolution, and strike ¶ 15 of the Plaintiff's Amended Complaint.

Dated: Buffalo, New York
September 11, 2026

**GERBER CIANO KELLY BRADY LLP**

______________________________
Richard J. Zielinski, Esq.
Daniel W. Gerber, Esq.
Dominick F. Roa, Esq.
*Attorneys for Defendant*
*Extra Space Storage Inc.*
P.O. Box 1060
Buffalo, New York 14201
Tel.: 716-306-6593
rzielinski@gerberciano.com
dgerber@gerberciano.com
droa@gerberciano.com

TO: **Bromberg Law Office, P.C.**
Brian Bromberg
99 Main Street
Nyack, NY 10960
(212) 248-7906
brian@bromberglawoffice.com

**TESKE LAW PLLC**
Vildan A. Teske (*pro hac vice*)
Lee Owen (*pro hac vice*)
80 South Eight Street, Ste., 900
Minneapolis MN 55402
(612) 767-0521
teske@teskelaw.com
owen@teskelaw.com

**The Andrews Firm**
Seth Andrews, Esq.
43 Court Street, Ste 810
Buffalo, NY 14202
716-906-8685
andrews@theandrewsfirm.com

***CERTIFICATE OF SERVICE***

I, Richard J. Zielinski, an attorney, hereby certify that on September 11, 2026, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rule of Civil Procedure, and/or the Western District's Local Rules, and/or the Western District's Rules on Electronic Service upon the following parties and participants:

Daniel W. Gerber

Brian L. Bromberg

Seth Andrews

Richard James Zielinski

Dominick F. Roa

Vildan A. Teske

Dated: Buffalo, NY
September 11, 2026

Richard J. Zielinski