# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION®

**CONSUMER ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

**Complete and file this form to start arbitration under an arbitration agreement in a consumer contract.**

**Consumer**

Name of Consumer: Desiree Reyes c/o Brian L. Bromberg, Esq.

Address: 99 Main Street

| | | |
|---|---|---|
| City: Nyack | State: New York | Zip Code: 10960 |
| Telephone: 212-248-7906 | Email Address: brian@bromberglawoffice.com | |

Representative's Name (if known): Brian L. Bromberg

Firm (if applicable): Bromberg Law Office, P.C.

Representative's Address: 99 Main Street

| | | |
|---|---|---|
| City: Nyack | State: New York | Zip Code: 10960 |
| Telephone: 212-248-7906 | Email Address: brian@bromberglawoffice.com | |

**Business**

Name of Business: Extra Space Storage, Inc., Extra Space Management, Inc., and Extra Space Storage, LP

Address: 2795 E Cottonwood Pkwy

| | | |
|---|---|---|
| City: Cottonwood Heights, | State: Utah | Zip Code: 84121 |
| Telephone: 801-365-4600 | Email Address: | |

Representative's Name (if known): Richard J. Zielinski, Esq.

Firm (if applicable): Gerber Ciano Kelly Brady LLP

Representative's Address: 599 Delaware Avenue Suite 100

| | | |
|---|---|---|
| City: Buffalo | State: New York | Zip Code: 14201 |
| Telephone: 716-306-6593 | Email Address: rzielinski@gerberciano.com | |

Which party is filing this arbitration case? *(check one)* ☐ Consumer ☑ Business

Mediation: If you would like the AAA to contact the other parties to attempt to arrange mediation, please check this box. ☐

Amount of Claim: $ 3,000

Other Relief Sought: ☐ Attorney's Fees ☐ Interest ☐ Arbitration Costs ☐ Other; explain:

Briefly explain the dispute and each claim. You may attach additional pages if necessary:

See addendum.

AMERICAN ARBITRATION ASSOCIATION®

**CONSUMER ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| |
|---|
| Please describe the qualifications you would like the arbitrator(s) to have:<br><br>See addendum. |
| Type of process being requested: ☑ Documents-Only Procedures ☐ Evidentiary Hearing |
| If you are requesting an Evidentiary Hearing, how would you like it to take place (check one):<br>☐ Virtually (online) ☐ In-Person — Locale (Location): City State |
| Filing Fee to be paid if filed by the Consumer: $225 (unless the parties' arbitration agreement states that consumers will pay a lesser amount).<br>Filing Fee to be paid if filed by the Business: ☑ $600 single arbitrator ☐ $725 three-arbitrator panel |

| | |
|---|---|
| Signature (may be signed by a representative): [signature] | Date: August 25, 2026 |

**Notice: To begin the arbitration process, you must provide the AAA a copy of this completed form as well as:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes (Please note: Parties located in California or New Jersey must submit to AAA the entire contract that contains the agreement to arbitrate);
- The proper filing fee (filing fee information is noted above and in the Costs of Arbitration section of the Consumer Arbitration Fee Schedule, which can be found at www.adr.org); and
- A copy of the court order, if arbitration is court-ordered.

**Also send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file online, visit **www.adr.org** and click on File a Case and follow directions. To avoid the creation of duplicate filings, please submit the filing documents and payment at the same time. When filing electronically, no hard copies are required.

To file by mail, send the initial filing documents and the filing fee to: American Arbitration Association, Case Filing Services, 120 Broadway, Floor 21 - Intake, New York, NY 10271.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less t.han 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

Pursuant to New Jersey Statutes § 2A:23B-1 et seq., consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website

**Richard Zielinski**
Partner

**Direct Dial/Text:** 716.306.6593
**Fax:** 646.350.1901
rzielinski@gerberciano.com

GERBER CIANO KELLY BRADY LLP

**US Mail:**
PO Box 1060
Buffalo, New York 14201

**Visit Us/FedEx/UPS:**
599 Delaware Ave., Suite 100
Buffalo, New York 14202

August 25, 2026

American Arbitration Association
Case Filing Services
120 Broadway, Floor 21 – Intake
New York, NY 10271
**VIA EFILING**

RE: Desiree Reyes v. Extra Space Storage, Inc., et. al.
AAA Case No.:
Our File No.: 1290.0391

**Brief explanation of the dispute and claims**

Consumer alleges that the Businesses unlawfully enforced a lien on her property, which was stored at the facility located at 3635 Berry Fields Rd. in Geneva, NY, by auctioning her property while she was allegedly on active duty in the military. Consumer alleges this constitutes a violation of 50 U.S.C. §§ 3901 et. seq., known as the Servicemembers Civil Relief Act. Consumer also alleges that the Businesses were unjustly enriched and converted her property through the aforementioned alleged acts.

The Businesses deny the Consumer's allegations and claims of statutory violation, unjust enrichment, and conversion. The Businesses acted in accordance with the law and the lease agreement executed by the Consumer, who breached the agreement by failing to pay the agreed upon, reduced price.

**Desired Qualifications of Arbitrator**

The Businesses request an arbitrator who is a former judge or attorney with substantial experience in commercial litigation and arbitration. The arbitrator should have significant experience with contract interpretation, enforcement of arbitration agreements, claims arising under federal statutes, business tort claims, agency principles, alter ego and veil-piercing allegations, and disputes involving affiliated corporate entities. Preference should be given to candidates with experience serving as sole arbitrators in complex commercial matters and familiarity with New York law and the personal storage industry.

# Electronic Record of Contracts

This document was generated as a record of certain contracts created, accepted and stored electronically.

## Summary of Contracts

This document contains the following contracts.

| Title | Version | ID |
|---|---|---|
| **Insurance Rejection Form** | 4.0 | 6473e9fc9761eb57a3bf13f5 |
| **Insurance Application** | 12.0 | 6489ece14e4b4da76033cbe7 |
| **Lease Agreement** | 13.0 | 66352e0aa260374bc094cddb |

## Contract details:

| Title | Version | ID |
|---|---|---|
| **Insurance Rejection Form** | 4.0 | 6473e9fc9761eb57a3bf13f5 |

## Contract accepted by:

**Desiree Reyes**

Signer ID: [redacted]

Email: d[redacted]

Date / Time: Oct 22, 2024 at 10:46 AM EDT

IP Address: 174.197.200.138

Metadata provided with the acceptance:

| | |
|---|---|
| AssociationId | 1509277636 |
| AccountNumber | 2004752254 |
| DocumentId | 74561684 |
| email | d[redacted] |
| name | Desiree Reyes |

## Insurance Rejection Form

Customer shall maintain comprehensive insurance coverage equal to 100% of the actual cash value of all personal property stored in the Space against damage by water, fire, extended coverage perils, vandalism, burglary, or loss due to any cause. To the extent Customer does not maintain insurance for the full cash value of the personal property stored, Customer shall be deemed to have 'self-insured' and shall bear all risk of loss or damage.

PERSONAL PROPERTY STORED IN THE SPACE IS NOT INSURED BY OPERATOR OR THE OWNER AGAINST LOSS OR DAMAGE.

Customer hereby releases Operator, Owner and Operator's Agents from any and all claims for damage or loss to personal property that are caused by or result from perils that are, or would be, covered under the required insurance policy and hereby waives any and all rights of recovery against Operator, Owner and Owner's Agents in connection with any damage which is or would be covered by any such insurance policy.

**I have had the risks of choosing not to insure my stored items explained to me and I elect to use an alternative source of insurance without proving coverage and I accept all risk by waiving all liability for the contents of my unit due to damage suffered by way of an insurable event.**

Unit # 1000

Customer Signature: Desiree Reyes
Electronically Signed On: 10/22/2024 10:46:49 EDT

ExtraSpaceStorage.
LifeStorage STORAGE EXPRESS.
all affiliates of Extra Space Storage, Inc.

## Contract details:

| Title | Version | ID |
|---|---|---|
| **Insurance Application** | 12.0 | 6489ece14e4b4da76033cbe7 |

## Contract accepted by:

**Desiree Reyes**

Signer ID: [redacted]
Email: d[redacted]

Date / Time: Oct 22, 2024 at 10:46 AM EDT
IP Address: 174.197.200.138

Metadata provided with the acceptance:

| | |
|---|---|
| AssociationId | 1509277636 |
| AccountNumber | 2004752254 |
| DocumentId | 74561684 |
| email | d[redacted] |
| name | Desiree Reyes |

## APPLICATION FOR ACCEPTANCE OR REJECTION OF INSURANCE (MASTER POLICY: IM00002000)

Space No.:______1000 ___________ Facility: _7511 - Geneva - Berry Fields Rd___________________________________________

**I UNDERSTAND THAT MY PROPERTY IS STORED AT MY SOLE RISK AND THAT I HAVE AGREED TO INSURE MY PERSONAL PROPERTY FOR ITS FULL VALUE AGAINST ALL RISKS**

I also understand that the owner, landlord, lessor or operator of this storage facility:

1) Is a commercial landlord renting storage space, is not a warehouseman, and does not take custody of my property.

2) Is not responsible for any loss to my property.

3) Does not provide insurance on my property for me.

**MY CHOICE OF INSURANCE OPTIONS:**

- Obtain from my own insurance agent
  Your existing home or business insurance policy might provide similar coverage. We are not qualified to evaluate your policy - an insurance agent will need to provide this service.
- Obtain insurance available through Beecher Carlson Insurance Services LLC from Occidental Fire & Casualty Company of North Carolina.

I understand and agree that under the options below, to the extent I do not purchase insurance, insurance lapses or do not fully insure my goods, I personally assume all risk of loss of the property in my storage space.

| Customer Initials: __DR<br>Electronically Signed On:<br>__10/22/2024 10:46:49 EDT | **Monthly Premium**<br>[redacted] | **Coverage Election:** Declined |
|---|---|---|

If Occupant's insurance election is to purchase insurance available through Occidental Fire & Casualty Company of North Carolina, then Occupant also acknowledges the following.

I understand the amount noted is the amount I must pay for the insurance I have selected and is due no later than the date on which my monthly rent is due. This is a maximum coverage limit. The actual amount paid in the event of loss will be determined by proof of loss documentation. I authorize the owner, landlord, lessor or operator of this storage facility to receive the premium and to send it to the insurance company on my behalf.

I hereby apply to Occidental Fire & Casualty Company of North Carolina for insurance in the amount initialed above. I have voluntarily elected to purchase this insurance. I have read and completed this application for insurance provided in the policy underwritten by Occidental Fire & Casualty Company of North Carolina. Occidental Fire & Casualty Company of North Carolina may reinsure a substantial part of your insurance coverage with an affiliate of Extra Space Storage, which would then receive information about your insurance, and could then benefit from your purchase of this insurance.

**APPLICATION PAGE**: When I have properly completed, signed this application, made the first payment of premium and received a Certificate of Storage Insurance and my coverage will be effective as of the date I signed this page, for the amount of insurance I have selected and initialed above.

I understand my insurance will continue on a month-to-month basis as long as I continue to pay the premium noted above. Failure to pay any premium in full will result in the cancellation, without notice, of my insurance.

**ELIGIBILITY**: I understand that the opportunity to purchase insurance on property stored within the building is available to all Tenants/Occupants who have entered into a Rental Agreement with the owner, landlord, lessor or operator for enclosed storage space. Coverage does not apply to property stored in a commercial office suite, retail space, parking space, other open storage areas or any other location.

**POLICY CHANGES**: I understand that I will receive one month's notice of changes to the policy and/or premium rates, and the policy and/or new rate shall be effective on the 1st of the month following the month in which advance notice of such change is provided.

**INSURANCE INFORMATION**: I have received a copy of the Customer Insurance Program Brochure and Certificate of Customer Storage Insurance. If I should need any additional information regarding this program I can call or write Beecher Carlson Insurance Services LLC at the phone number or address listed below. **For the purpose of identification and reference, the printed number of the Rental Agreement is deemed to be the certificate number assigned to the Customer Protection Plan Certificate. Beecher Carlson Insurance Services LLC is an independent licensed insurance broker which represents Occidental Fire & Casualty Company of North Carolina.**

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

Beecher Carlson Insurance Services
A Brown & Brown Company
Six Concourse Parkway
Suite 2300
Atlanta, GA 30328

**Manager of this facility is NOT an insurance agent. Please do not direct questions regarding insurance to them. Contact Beecher Carlson at cpp@bbrown.com.**

Tenant/Occupant Signature: __Desiree Reyes
Electronically Signed On: __10/22/2024 10:46:49 EDT

CPP - Application Base 20230614

## Contract details:

| Title | Version | ID |
|---|---|---|
| **Lease Agreement** | 13.0 | 66352e0aa260374bc094cddb |

## Contract accepted by:

**Desiree Reyes**

Signer ID: [redacted]

Email: d[redacted]

Date / Time: Oct 22, 2024 at 10:46 AM EDT

IP Address: 174.197.200.138

Metadata provided with the acceptance:

| | |
|---|---|
| AssociationId | 1509277636 |
| AccountNumber | 2004752254 |
| DocumentId | 74561684 |
| email | d[redacted] |
| name | Desiree Reyes |

| | |
|---|---|
| ExtraSpaceStorage. LifeStorage STORAGE EXPRESS. all affiliates of Extra Space Storage Inc.<br><br>Extra Space Storage<br>3635 Berry Fields Rd<br>Geneva NY, 14456<br>(315) 960-7001 | **Rental Agreement Date:** Oct 22, 2024<br>**Rental Start Date:** Oct 22, 2024<br>**Account ID:** 2004752254<br>**Space Number:** 1000<br>**Approximate Size:** 10x10<br>**Monthly Rental Charge:** [redacted]<br>**Monthly Due Date:** 22<br>**Paid Through Date:** 11/21/2024<br>**Monthly Billing Election:** N |
| **CUSTOMER**<br>**Name** Desiree Reyes<br>**Address** [redacted]<br>**City, State ZIP** [redacted]<br>**Cell Phone** [redacted]<br>**Alternate Phone**<br>**Identification** [redacted]<br>**Date of Birth** [redacted] 2000<br>**E-mail** d [redacted] | **ALTERNATE CONTACT**<br>**Name**<br>**Address**<br>**City, State ZIP** ,<br>**Cell Phone**<br>**E-mail**<br>**Authorized for Access?** False<br>***If alternate information is refused, customer must sign here.***<br>X Desiree Reyes **Electronically signed on:** 10/22/2024 10:46:49 EDT |

**Others Authorized for Access (other than Customer):** , ,

*** Operator, in its sole discretion, may provide any individual(s) authorized for access in this Agreement with gate code, unit no., account information, and assist with lock cutting**

| Addendums | Is there a lien on any of the items to be stored? If yes, Lien Addendum is required. | Is a vehicle that requires state registration being stored? If yes, Vehicle Addendum is required. | Is Customer or Customer's spouse a service member in the military? If yes, Military Addendum is required. | Is Customer a business? If yes, Business Addendum is required. |
|---|---|---|---|---|
| | No | No | No | No |

**General Description of Property Stored:** Contents from

**Declared Value of Property Stored:** $3,000.00

| | |
|---|---|
| previous storefront | |
| **Customer acknowledges that the information provided above is accurate and current.** | **Customer signature:** Desiree Reyes<br>**Electronically signed on:** 10/22/2024 10:46:49 EDT |

**THIS RENTAL AGREEMENT ("Agreement") is executed on the date stated above by and between EXTRA SPACE MANAGEMENT, INC. ("Operator") as agent for the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, and the individual or business listed above ("Customer") for the purpose of renting the space listed above (the "Space")which is part of a larger facility (the "Facility"). CUSTOMER HAS EXAMINED THE SPACE AND FACILITY AND ACCEPTS THEM "AS IS." Customer acknowledges and agrees the measurements noted for the Facility and the spaces located thereon are an approximation only, do not refer to usable space and that the size of the Facility and any referenced sizes are approximate, given for illustration only and may vary materially. Spaces may be smaller or larger than advertised. Spaces are not rented on a square foot basis and rent is not based on square foot measurements. Operator does not represent or guarantee the safety of the Facility or the personal property stored by Customer. THE RULES AND REGULATIONS POSTED AT THE FACILITY, IF ANY, ARE BY REFERENCE MADE PART OF THIS AGREEMENT, which rules and regulations may be modified by Operator to assist with the operation, safety, and cleanliness of the Facility. The Facility is operated in accordance with state and local laws governing self-storage facilities in the state where the Facility is located, which are herein incorporated by reference.**

**NOTICE: YOU MAY CHOOSE TO BE CONTACTED FOR LEGAL MATTERS RELATED TO LATE OR LIEN NOTICES, VIA ELECTRONIC MAIL BY PROVIDING YOUR ELECTRONIC MAIL ADDRESS IN AT LEAST TWO LOCATIONS WITHIN THE OCCUPANCY AGREEMENT.**

**Email Address: ____[redacted]____**

**TERM, MONTHLY RENTAL AMOUNTS AND OTHER CHARGES**

**1) The term of this Agreement begins on the Rental Start Date listed above and shall continue on a MONTH-TO-MONTH basis until terminated.**

**2) NOTICE: THE MONTHLY OCCUPANCY CHARGE AND OTHER CHARGES STATED IN THIS AGREEMENT ARE THE ACTUAL CHARGES YOU MUST PAY. The first Monthly Rental Charge and a one-time, non-refundable, administration fee shall be paid on the Rental Agreement Date listed above. Thereafter, the Monthly Rental Charge shall be due on the same day every month (the "Monthly Due Date"). The period between consecutive Monthly Due Dates is referred to as the "Rental Month." The last day of the Rental Month for which all Monthly Rental Charges have been paid is the "Paid Through Date." Customer shall pay Operator the Monthly Rental Charge, taxes and insurance in advance, without prior notice or billing from Operator. NO MONTHLY BILLS OR STATEMENTS WILL BE SENT TO CUSTOMER UNLESS ELECTED ABOVE. If Customer elects to receive monthly billing, a monthly service charge of $1.00 shall be added to Customer's account.**

**3) If Customer does not pay the Monthly Rental Charge by the 5th day following Customer's Paid Through Date, Customer shall pay a late fee of $20.00 or 20% of the Monthly Rental Charge, whichever is greater. Operator may charge a late fee for each month Customer fails to pay the Monthly Rental Charge by the 5th day following the Paid Through Date. Late Fees will be assessed on or after the 6th day following Customer's current Paid Through Date. Any late fees incurred by Customer are a service charge and not a penalty. Partial payments will not be accepted, however, if a partial payment is accepted it will be at the sole discretion of Operator and if accepted will first be applied to fees and service charges, then to Monthly Rental Charges, taxes and insurance. If at the close of business on the 30th day following the Customer's current Paid Through Date, the Monthly Rental Charge or other charges still remain past due, a pre-foreclosure fee of $120.00 will be assessed and Customer must pay such amount by cash, credit card, or by certified funds. No personal/company checks will be accepted for past-due payments. It is agreed to and understood that partial payments made to cure a default for nonpayment of rent will not delay or stop foreclosure and sale of Customer's property. The tender of partial payments, if accepted, shall not serve to waive or avoid the legal effect of prior notices given to Customer. Only full payment on Customer's account prior to the published auction date will stop a scheduled sale of the property.**

**4) Customer's Rental Terms May Change with 30 Days' Notice. Customer acknowledges this Lease is month to month and that Operator may change or increase Customer's Monthly Rental Charge, fees and charges, due to changes in market conditions or for any other reason at any time upon 30 days' notice to Customer. Operator may send notice to Customer's email address or by any other method of notice described in Section 31 below. By continuing to use the Space after a rate change, Customer agrees to the**

**Rental Agreement as changed and that all of its other terms remain in effect. AS PART OF YOUR AGREEMENT TO RENT, YOU MAY HAVE RECEIVED AN INITIAL RENTAL DISCOUNT. YOUR MONTHLY RENTAL CHARGE IS [redacted] AS COMPARED TO THE SUGGESTED RENTAL RATE OF $116.00 FOR YOUR STORAGE UNIT.**

**5) IF CREDIT CARD OR OTHER PAYMENT INFORMATION IS PROVIDED BY CUSTOMER TO OPERATOR, CUSTOMER AUTHORIZES OPERATOR TO AUTOMATICALLY PROCESS THE PAYMENT VIA THE METHOD PROVIDED ON OR NEAR THE MONTHLY DUE DATE FOR MONTHLY RENTAL CHARGES, TAXES, INSURANCE, AND OTHER FEES AS APPLICABLE UNLESS OTHERWISE DIRECTED BY CUSTOMER. IT SHALL BE CUSTOMER'S SOLE RESPONSIBILITY TO PROVIDE OPERATOR WITH ACCURATE, CURRENT AND WORKING PAYMENT INFORMATION. THE FAILURE TO PROVIDE SUCH MAY RESULT IN NON-PAYMENT OF MONTHLY RENTAL CHARGES AND OTHER ACCRUED CHARGES, ALLOWING OPERATOR TO SELL CUSTOMER'S PERSONAL PROPERTY PURSUANT TO SECTION 22 BELOW. IT SHALL BE CUSTOMER'S SOLE RESPONSIBILITY TO VERIFY THAT PAYMENTS ARE MADE AND BY WHAT METHOD PAYMENTS ARE MADE. CUSTOMER MAY CANCEL AUTOMATIC PAYMENTS AT WWW.EXTRASPACE.COM USING THE ACCOUNT MANAGEMENT TOOL BY LOGGING IN AND CLICKING "CANCEL AUTOPAY" OR IN PERSON AT THE FACILITY'S OFFICE.**

**Customer Initials:** DR
**Electronically signed on:** 10/22/2024 10:46:49 EDT

**6) Any checks returned for insufficient funds will result in a $25.00 service charge to Customer, and the returned check amount and service charge must be re-paid by cash, credit card, or money order. Customer shall not be permitted to pay with a check after two checks have been returned for insufficient funds. Operator may also, at its discretion, refuse to accept credit card payments if Customer's credit card charges have been disputed.**

**ARBITRATION**

**7) Agreement to Arbitrate: By initialing below, Customer agrees that, either Customer or Operator may elect to resolve any dispute by neutral, binding arbitration, on an individual basis only, and not by a court action, subject to the exceptions and terms set forth below. Customer acknowledges that he/she had the option of entering into an Agreement without an Arbitration provision, but voluntarily chose to enter into an Agreement with an Arbitration provision.**

**Except as provided below, Operator and Customer agree to arbitrate all Claims and Disputes between Operator and Customer.**

**"Claims" are any claims or controversies, at law or in equity, against each other related in any way to or arising out of in any way to this Rental Agreement, the Customer's use or occupancy of the Space and this Property or any claim of bodily injury or property damage, or the enforcement of any remedy under any law, ordinance, statute or regulation, even if it arises after the Agreement has terminated. "Claims" include, but are not limited to, claims related in any way to or arising out of in any way to any aspect of the relationship between Operator and Customer, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory. "Claims" also include such claims that Customer brings against Operator's employees, agents, parents, subsidiaries, affiliates, or other representatives or that Operator brings against Customer.**

**"Disputes" include without limitation disputes arising out of relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.**

**Unless Customer and Operator each agree otherwise, the Arbitration will be conducted by a single, neutral third party arbitrator. OPERATOR AND CUSTOMER WAIVE THEIR RIGHT TO TRIAL BY JURY OR IN A COURT. The party initiating the arbitration shall select the arbitration organization, subject to the other party's agreement to use such arbitration organization, which shall not unreasonably be withheld. Unless otherwise agreed, the arbitration shall take place within the County where the defendant/respondent resides. The applicable rules of the arbitration organization will govern the arbitration.**

**For Claims that do not exceed the jurisdictional limit of small claims court, Operator and Customer agree to bring such Claims in small claims court instead of arbitration, and the rules of the small claims court shall apply. If the Claim does not qualify to be brought in small claims court, Operator will pay for the arbitration administrative or filing fees, including the arbitrator fees, up to an aggregate total of $2,500.**

**OPERATOR AND CUSTOMER AGREE THAT THEY WILL ONLY PURSUE ARBITRATION ON AN INDIVIDUAL BASIS AND WILL NOT PURSUE ARBITRATION OR ANY OTHER CLAIM ON A CLASS-WIDE, REPRESENTATIVE, OR CONSOLIDATED BASIS. OPERATOR AND**

CUSTOMER ALSO AGREE THAT THEY WILL NOT PARTICIPATE AS A MEMBER OF A CLASS, AS A CLASS REPRESENTATIVE, OR IN A CONSOLIDATED ACTION.

The right to arbitration under this Arbitration Provision is protected by, and any arbitration shall be governed by, the Federal Arbitration Act (9 U.S.C. §1 et seq.). The Operator and Customer agree that the Operator's business and the relationship here involve interstate commerce.

Claims Not Subject to Arbitration. In the event applicable law prohibits the arbitration of certain specified Claims, such Claims shall not be subject to this Section. Operator retains the right to pursue any eviction, action to enforce a lien and/or unlawful detainer remedies in any court. Operator retains the right to conduct a lien sale.

__X__ Customer agrees to the Arbitration Provision
____ Customer refuses the Arbitration Provision

Customer Initials: DR
Electronically signed on: 10/22/2024 10:46:49 EDT

ACCESS

8) Customer shall have access to the Space and the Facility only during such hours and days as are regularly posted at the Facility, which are subject to change by Operator. Any access to the Facility outside of access hours is considered trespassing. If Monthly Rental Charges or other charges remain unpaid for five (5) days following the Monthly Due Date, unless otherwise prohibited by law, Operator may restrict or deny Customer's access to the Space and/or Facility. If Customer is renting more than one Space at any given time, default on one rented Space shall constitute default on all rented Spaces, entitling Operator to deny access to Customer on all rented Spaces.

9) Customer shall provide the lock for the rental Space sufficient to secure Customer's personal property unless a permanent lock is already installed on the unit. Operator does not represent the adequacy of any particular lock, Customer shall not provide Operator, Operator's agents, authorized representatives and employees (collectively "Operator's Agents") with a key or any kind of access code to Customer's Space.

10) Customer grants Operator and Operator's Agents or any governmental authority access to the Space: a) upon three (3) days prior written notice, b) upon default of the Agreement by Customer for thirty (30) days, c) in emergency circumstances (defined as imminent injury to persons or property), or d) as required by law. If Customer fails to grant access, Operator, Operator's Agents or the agents of any governmental authority shall have the right to remove Customer's lock and enter the Space to examine the contents, to make repairs or alterations, to take reasonable steps to preserve the Space, to comply with the law, or to enforce Operator's rights; including the right to relocate Customer's belongings if necessary. In the event that Operator must replace the lock, Operator may charge Customer for the lock.

11) Customer shall safeguard any property stored at the Facility. It is Customer's sole responsibility as to those persons who are given access to Customer's Space and Operator shall not be liable for anyone other than Customer entering the Space unless by Operator's gross negligence.

LIMITATIONS ON USE OF THE SPACE AND FACILITY

12) Customer shall not make or allow any alterations to the Space. Customer agrees that the Space and Facility shall be used solely for the storage of personal property. Customer shall not loiter about the Facility, spend excessive or unnecessary time in or around the Space or interfere with the use of the Facility by other customers of Operator. Customer shall not use the Space for any unlawful purpose and expressly agrees not to use the Space for human or animal habitation. Customer shall not store in the Space or at the Facility anything to which any other person or business has right, title, or interest. Customer represents and warrants that there are NO LIENS OTHER THAN OPERATOR'S LIEN UPON THE PROPERTY STORED. A Lienholders Addendum to this Agreement must be completed if there are any lienholders on any stored property and for each stored vehicle, absent which such vehicle will be deemed unauthorized and be subject to removal from the Space and Facility. The storage of food and any perishable goods is strictly prohibited. The use of electricity in the Space is strictly prohibited unless agreed upon in writing by Operator. IT IS SPECIFICALLY UNDERSTOOD AND AGREED THAT CUSTOMER SHALL NOT STORE OR USE IN THE SPACE OR AT THE FACILITY ANY HAZARDOUS OR TOXIC MATERIALS OR ANY INHERENTLY DANGEROUS OR FLAMMABLE SUBSTANCE. In the event that any food, hazardous substances, or toxic materials are found in the Space, Operator has the right to dispose of such items without any notice to Customer.

**13) Customer agrees that the Space is not appropriate for the storage of jewels, furs, heirlooms, art works, collectibles or other irreplaceable items having special sentimental or emotional value to Customer and Customer agrees not to store said items. Customer hereby waives any claim for sentimental or emotional value for Customer's property that is stored in the Space or at the Facility.**

**14) If the Space is so equipped, Customer is prohibited from storing any items within 18" of the clearance to the fire sprinkler head diffuser for life safety reasons. Customer acknowledges that any items stored within 18" of the clearance of the fire sprinkler head diffuser may be removed by Operator and placed in a separate space without notice to Customer, all at Customer's expense.**

**LIMITATION OF OPERATOR'S LIABILITY AND INDEMNITY**

15) **OPERATOR IS NOT A WAREHOUSEMAN ENGAGED IN THE BUSINESS OF STORING GOODS FOR HIRE, AND NO BAILMENT IS CREATED BY THIS AGREEMENT. OPERATOR EXERCISES NEITHER CARE, CUSTODY, NOR CONTROL OVER CUSTOMER'S STORED PROPERTY AND ALL PROPERTY STORED WITHIN THE SPACE OR AT THE FACILITY BY CUSTOMER SHALL BE STORED AT CUSTOMER'S SOLE RISK.**

**16) Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, shall not be liable to Customer for any damage or loss to any person or property at the Facility and to any property stored in the Space, arising from any cause whatsoever, including, but not limited to, theft, fire, mysterious disappearance, mold, mildew, water, rain, rodents, insects, acts of God, partial or sole negligence or failure to act of Operator or Operator's Agents, except for damage or loss resulting from Operator's fraud, gross negligence or willful violation of law. Customer shall indemnify and hold Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, harmless from any and all damage, loss, or expense arising out of or in connection with any damage to any person or property, occurring in the Space or at the Facility arising in any way out of Customer's use of the Facility, even if such damage or loss is caused entirely or in part by the negligence of Operator, Operator's Agents, Operator's affiliates or the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different. Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, shall not be liable whatsoever to any extent to Customer or Customer's invitees, family, employees, agents or servants for any personal injury or death arising from Customer's use of the Space or Facility from any cause whatsoever including, but not limited to, the active or passive acts, omissions or negligence of Operator or Operator's Agents. Customer shall be responsible to pay or reimburse Operator for any damage caused to the Space or Facility by Customer or Customer's invitees, regardless of fault.**

**17) Climate controlled spaces are heated and cooled depending on outside temperature. These spaces do not provide constant internal temperature or humidity control. Operator does not warrant or guarantee temperature or humidity ranges in the Space due to changes in outside temperature and humidity, or due to other considerations, and Customer understands and assumes the risk of climate controlled spaces not meeting certain temperature and humidity requirements.**

18) **Customer agrees that the total value of the property stored shall not exceed $5,000 unless Operator has agreed in writing for Customer to store property exceeding $5,000; provided that Customer agrees that Operator's maximum liability to Customer for any claim or suit by Customer, including but not limited to any suit alleging wrongful foreclosure or sale of Customer's property is $5,000. This section shall not create any liability on the part of Operator to Customer for any loss or damage to Customer's property, regardless of cause.**

**19) No promises or representations of safety or security have been made to Customer by Operator or Operator's Agents. Operator makes no representation that video surveillance is present at any location or in any portion of a Facility and video surveillance equipment may be changed or removed at any time by Operator. There shall be no liability to Operator, Operator's Agents, Operator's affiliates or the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, in the event alarm, video system or sprinkler system, or any components thereof, shall fail or malfunction. Video recording devices are not monitored.**

**20) Operator's Agents are not authorized or permitted to make any warranties about the Space or the Facility. Operator's Agents' ORAL STATEMENTS DO NOT CONSTITUTE WARRANTIES and shall not be relied upon by Customer. The entire agreement and understanding of the parties hereto are embodied in this writing and NO OTHER WARRANTIES are given.**

**INSURANCE**

21) **Customer shall maintain comprehensive insurance coverage of at least 100% of the actual cash value of all personal property stored in the Space against damage by water, fire, extended coverage perils, vandalism and burglary. To the extent Customer does not maintain insurance for the full value of the personal property stored, or fails to maintain insurance at all, Customer bears all risk of loss or damage. Customer hereby releases Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, from any and all claims for damage or loss to personal property that are caused by or result from perils that are, or would be, covered under the required insurance policy and hereby waives any and all rights of recovery against Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, in connection with any damage which is or would be covered by any such insurance policy. CUSTOMER'S PERSONAL PROPERTY STORED IN THE SPACE OR AT THE FACILITY IS NOT INSURED BY OPERATOR AGAINST LOSS OR DAMAGE.**

**OPERATOR'S LIEN AND RIGHT TO ENFORCE UPON NONPAYMENT**

22) **CUSTOMER ACKNOWLEDGES AND AGREES THAT CUSTOMER'S PERSONAL PROPERTY STORED AT THE FACILITY WILL BE SUBJECT TO A CLAIM OF LIEN IN FAVOR OF OPERATOR FROM THE DATE THE MONTHLY RENTAL CHARGE AND OTHER CHARGES ARE DUE AND UNPAID, AND FOR EXPENSES REASONABLY INCURRED IN THE SALE OR DISPOSITION OF CUSTOMER'S STORED PERSONAL PROPERTY. OPERATOR MAY SELL CUSTOMER'S PERSONAL PROPERTY IN A COMMERCIALLY REASONABLE MANNER AFTER GIVING CUSTOMER REASONABLE NOTICE, IN ORDER TO SATISFY SUCH LIEN. CUSTOMER AGREES THAT ANY SPACE ADVERTISED AND SOLD USING AN ONLINE AUCTION PROVIDER IS DEEMED TO BE SOLD IN A COMMERCIALLY REASONABLE MANNER. Operator may enforce Operator's Lien by selling Customer's stored personal property at public sale, in accordance with the provisions of applicable law, and apply the net proceeds from such sale to the payment of all sums due to Operator. This remedy is cumulative with and in addition to every other remedy given hereunder or hereafter existing at law or in equity. It is further understood that the date of sale of Customer's property pursuant to this section, if applicable, shall constitute the date of termination of this Agreement. In the event of a foreclosure of Customer's interest in the Space, it is understood and agreed that the liability of Customer for the rents, charges, costs and expenses provided for in this Agreement shall not be relinquished, diminished or extinguished prior to payment in full. Operator may use a collection agency to secure any remaining balance owed by Customer after the application of sale proceeds, if any. If any property remains unsold after foreclosure and sale, Operator may dispose of said property in any manner considered appropriate by Operator in its sole discretion.**

**23) Any time prior to lien sale, any person claiming a right to Customer's liened property may stop the sale by paying in full in the form of CASH ONLY all amounts owed. Upon release of such property to the payor, Operator shall have no further liability to any person for the liened property.**

**24) In addition to any other requirements of applicable law, Operator may post information relating to any public sale resulting from Operator's enforcement of its lien at the following website: http://auctions.extraspace.com.**

**EVENT OF DEFAULT**

**25) If Customer shall fail or refuse to perform any of the covenants, conditions or terms of this Agreement, or in the event Customer files a voluntary petition in Bankruptcy or suffers a petition in involuntary bankruptcy to be filed against him/her, Customer shall be deemed in default in the performance of this Agreement, except as limited by law. Nothing contained in this Agreement shall be construed as limiting Operator's rights and remedies as provided under the laws of the state where the Facility is located. In the event of a default, and without prejudice to any other remedies, Operator may (a) terminate this Agreement, or (b) seize and sell the personal property pursuant to Section 22 above.**

**TERMINATION OF THE AGREEMENT AND VACATING THE SPACE**

**26) Customer must provide Operator notice prior to vacating the Space and terminating this Agreement. Operator shall not be required under any circumstance to refund Customer's first month's rent or other charges paid by Customer to Operator, except as set forth in this refund policy. In addition, Operator shall not be required to prorate Monthly Rental Charges if Customer gives notice of termination to Operator and the termination date occurs during a Rental Month for which Customer already paid the Monthly Rental Charge. However, if Customer's notice of termination includes a date of termination that is to occur during a future Rental Month, Operator shall prorate the Monthly Rental Charge for the Rental Month wherein termination occurs. Furthermore, Customer**

**shall be entitled to a refund of any prepaid Monthly Rental Charges only if (a) Customer has not occupied the Space for any portion of the prepaid Rental Month at the time of termination and (b) such prepaid Monthly Rental Charges are greater than $25.00. Customer agrees to the refund policy outlined above.**

**Customer Initials:** DR
**Electronically signed on:** 10/22/2024 10:46:49 EDT

**27) If Customer is in default under this Agreement, or for any other reason in Operator's sole discretion, Operator may terminate this Agreement by giving Customer fifteen (15) days written notice.**

**28) If Customer or Operator terminates this Agreement as provided above, Customer agrees to move out and completely vacate the Space on or prior to the anticipated termination date. Customer shall leave the Space in the same condition as delivered to Customer. Any property left behind will be considered abandoned property and Operator may dispose of such in a manner that Operator sees fit. If Operator is forced to dispose of any abandoned property or forced to clean the Space, Operator may charge Customer a reasonable cleaning fee, which shall be an amount no less than $50.00. Upon Customer's notice of termination, Operator may consider this Agreement terminated and may relet the Space any time after the notification date provided. Customer shall be deemed to have conclusively abandoned all property which remains in the Space or on the Facility after the termination of this Agreement, upon default of this Agreement for thirty (30) days, or when Operator concludes based upon other reasonable considerations, including, but not limited to an unlocked Space, that Customer has abandoned Customer's property and the Space.**

**AMENDING THE AGREEMENT**

**29) All terms in this Agreement are SUBJECT TO CHANGE upon thirty (30) days written notice to Customer, including but not limited to, and without limitation, Monthly Rental Charges, late fees and other charges. Upon receiving notice of Operator's pending change(s) to this Agreement, Customer may terminate this Agreement on or before the effective date of such change by giving Operator written notice within ten (10) days of the change taking effect. If Customer does not give such notice of termination, the change shall become effective on the date stated in Operator's notice and shall thereafter apply to the occupancy hereunder, whether or not Customer has agreed to the change in writing.**

**NOTICE**

**30) Customer shall notify Operator of any change in Customer's address or phone number within ten (10) days of the change. Such notifications shall be (a) by certified mail, return receipt requested, postage prepaid, (b) delivered in person at the Facility's rental office (c) sent from customer via e-mail so long as the change of address request originates from the e-mail address Operator has on file for Customer, including the e-mail address provided in this Agreement if applicable, or (d) made at www.extraspace.com via online account management. Failure by Customer to notify Operator shall constitute a waiver by Customer of any defense based on failure to receive any notice.**

**31) Customer recognizes it is entering into a business relationship with Operator and to the fullest extent permitted by law, expressly consents to Operator contacting Customer via phone, e-mail or text messaging (including automated calls/messages) for purposes relevant to Customer's account or services related to Operator's business. Customer should review Customer's phone/text plan with its servicer to see if text message fees or data service rates apply and Customer agrees to accept such charges if applicable. Except as otherwise required by law, or as otherwise provided for in this Agreement, written notices or demands may be personally served by e-mail to the e-mail address provided by Customer in this Agreement (or updated e-mail address per separate notification as applicable) or by pre-paid first class U.S. Mail to the last known address of the party to be served, as contained in this Agreement. Such notice or demand shall be complete at on the date sent to Customer's e-mail address listed on this Agreement (or updated e-mail address per separate notification as applicable), if personally delivered (including e-mail), or on the date of pre-paid, properly addressed deposit with the U.S. Postal Service.**

**MISCELLANEOUS**

**32) Customer shall not assign, sublease or jointly occupy the Space or any portion thereof without in each instance obtaining the**

**prior written consent of Operator.**

**33) All of the provisions of this Agreement shall be binding upon the heirs, executors, administrators, representatives, successors and assignees of the parties hereto.**

**34) Operator and Customer hereby waive their respective rights to trial by jury of any cause of action, claim, counterclaim, or cross complaint, at law or in equity brought by either Operator against Customer or Customer against Operator arising out of or in any way connected with this Agreement, Customer's use or occupancy of the Space and the Facility or any claim of bodily injury or property damage, or the enforcement of any remedy under any law, ordinance, statute or regulation. Operator and Customer agree that no arbitration, small claims court proceeding or any other action or proceeding shall be brought against Operator or Customer more than one (1) year after the accrual of the cause of action or one (1) year after the claim arises, whichever is shorter, whether known or unknown when the claim arises or whether based on tort, contract or any other legal theory.**

**35) If Customer is not an individual, the undersigned warrants that he or she is an authorized agent of Customer.**

**36) If Customer or Customer's spouse is in the military service, Customer must fill out the Addendum to this Agreement regarding military. If Customer's military status (or Customer's spouse's military status) changes during the term of this Agreement, Customer must provide written notice to Operator. Operator will rely on this information to determine the applicability of the Servicemembers Civil Relief Act.**

**37) Customer represents and warrants to Operator that Customer is not a party with whom Operator is prohibited from doing business pursuant to the regulations of the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury, including those parties named on OFAC's Specially Designated Nationals and Blocked Persons List. Customer is currently in compliance with, and shall at all times during the Agreement term remain in compliance with, the regulations of OFAC and any other governmental requirement relating thereto. In the event of any violation of this section, Operator shall be entitled to immediately terminate this Agreement and take such other actions as are permitted or required to be taken under law or in equity. CUSTOMER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS OPERATOR FROM AND AGAINST ANY AND ALL CLAIMS, DAMAGES, LOSSES, RISKS, LIABILITIES AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COSTS) INCURRED BY OPERATOR ARISING FROM OR RELATED TO ANY BREACH OF THE FOREGOING CERTIFICATIONS. These indemnity obligations shall survive the expiration or earlier termination of this Agreement.**

**38) This Agreement contains the entire agreement of the parties and no representation or agreements, oral, or otherwise, between Operator and Customer not embodied herein shall be of any force or effect (except for written addenda agreed to between the parties).**

**39) By signing this Agreement, Customer acknowledges, accepts and consents to the collection and use of its data in accordance with the Extra Space Storage Privacy Policy located at www.extraspace.com/help/privacy.**

**40) Operator hereby notifies Customer that it operates pursuant to adopted environmental, social and governance (ESG) initiatives reported annually at https://ir.extraspace.com/sustainability.**

**Operator and Customer hereby execute this Agreement to be effective on the Rental Agreement Date listed above.**

| | |
|---|---|
| ______________________<br>**OPERATOR** | **Customer Signature:** Desiree Reyes<br>**Electronically signed on:** 10/22/2024 10:46:49 EDT<br>**CUSTOMER** |

New York Lease - 2405