**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| Desiree Reyes,<br><br>Plaintiff, on behalf of herself and all those similarly situated,<br><br>v.<br><br>Extra Space Storage, Inc.,<br><br>Extra Space Management, Inc.,<br><br>Extra Space Storage, LP,<br><br>Defendants. | **No. 26-CV-6494 (EAW)**<br><br>**AMENDED**<br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

---

## INTRODUCTION

Desiree Reyes brings this action on behalf of herself and all similarly situated servicemembers against Extra Space Storage to enforce their rights under the Servicemembers Civil Relief Act ("the SCRA"). Congress created these rights to ensure that those who abandon their civilian lives to answer the call of service are not punished financially for doing so.

Extra Space Storage, a national storage unit company, severely compromised that purpose by selling Private Reyes' and other similarly situated servicemembers' property in storage units, without first obtaining a court order as mandated by the SCRA. As a result, Extra Space Storage enriched themselves by selling the property Pvt. Reyes and the servicemember class members entrusted to them while they answered the call to serve their country.

## PARTIES

1. Plaintiff Desiree Reyes is a resident of Brunswick, Georgia. She enlisted in the United States Army in October of 2024 and has been on active duty service ever since, currently serving as a combat medic.
2. Defendant Extra Space Storage, Inc. ("ESSI"), a Maryland corporation, is a publicly traded company and the largest operator and owner of self-storage facilities in the United States, including throughout New York.
3. Defendant Extra Space Management, Inc. ("ESMI"), a Utah corporation, is a subsidiary of ESSI that manages stores for joint ventures and stores owned by third parties. Extra Space Storage, Inc., Annual Report (Form 10-K), at 15 (filed Feb. 20, 2026), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001289490/000128949026000011/exr-20251231.htm (the "2025 10-K").
4. Defendant Extra Space Storage LP ("ESSLP"), a Delaware limited partnership, is the operating partnership subsidiary of ESSI. *Id*. at at 5.
5. Both ESSI and ESMI are headquartered at 2795 East Cottonwood Parkway, Suite 300, Salt Lake City, Utah 84121.
6. In August 2026, ESMI reported five active principals in its Annual Report filed with the Utah Secretary of State. All are senior ESSI officials. ESMI's president, Jeffery Norman, is ESSI's Chief Financial Officer. ESMI's Vice Presidents Gwyn G. McNeal, Grace Kunde, Brett Nelson, and Kely Chipman are, respectively, ESSI's Chief Legal Officer, Chief Accounting Officer, Senior Legal Counsel, and Vice President of Investments.

7. Statements filed with the Securities and Exchange Comission (SEC) state that ESSI conducts substantially all of its business and holds its interest in Extra Space stores through ESSLP. 2025 10-K at 5, 65. As of December 31, 2025, ESSI held a 95.6% ownership interest in ESSLP through its general partner and limited partner interests. *Id.* at 65. ESSLP indemnifies ESSI for civil actions that relate to the operations of the Operating Partnership, with limited exceptions. *Id*. at 17-18.
8. Statements filed with the SEC state that "[ESMI] manages stores for [ESSI's] joint ventures and stores owned by third parties." *Id*. at 15. According to that same filing, ESSI "has elected to treat certain corporate subsidiaries, including Extra Space Management, Inc. ('ESMI'), as a taxable REIT subsidiary." *Id*. at 51.
9. In SEC filings, ESSI included ESMI as a "Significant Subsidary." Extra Space Management, Inc., Current Report (Form 8-K), Ex. 1.1 at Sched. 2 (filed June 25, 2026) https://www.sec.gov/Archives/edgar/data/1289490/000119312526282771/d32600dex11.htm (2026 8-K). ESSI also stated that ESSI or ESSLP owns each Significant Subsidary directly or indirectly. *Id*. at 7.
10. In 2025, ESSI wholly owned 2,018 storage facilities, partly owned 407 facilities through joint ventures, and managed 1,856 facilities for independent owners through its third-party management program, Management Plus. *See* https://www.extraspace.com/self-storage/faq/how-many-extra-space-storage-locations-are-there/.
11. In 2025, ESSI reported $129,476,000 in "management fees and other income" which "primarily represent the fees collected for our management of stores owned by third parties and unconsolidated joint ventures and other transaction fee income." 2025 10-K at 25.

12. An ESSI vice president stated, "One of the great strengths of [the Management Plus] platform is that we manage third-party properties exactly the same way we manage the properties we own. What does that mean for our partners? It means the same district managers who operate our owned stores also manage theirs. The same call center agents answer the phones. The same marketing team drives awareness. The same revenue management and pricing models are applied. This creates a seamless, consistent experience across all Extra Space Storage properties." *See* https://www.extraspace.com/inside-exr/third-party-management/benefits-of-extra-space-storage-third-party-management/.

13. When a customer attempts to lease a storage unit through ExtraSpace.com, the copyright notice at the bottom of the website references "Extra Space Storage Inc." and the "Learn More About Extra Space Storage" section states, "Extra Space Storage Inc., headquartered in Salt Lake City, Utah, owns and/or operates over 4,200 self storage properties in 42 states, and Washington, D.C." *See, e.g.,* https://www.extraspace.com/storage/facilities/us/new_york/geneva/7511/.

14. The Extra Space Lease Agreement illustrates the closely intertwined relationship between ESSI and ESMI. For example, the first page of the Lease Agreement and the Insurance Rejection Form include "Extra Space Storage" as an affiliate of ESSI. *See* ECF No. 10-3, Ex. A at 4, 9.

15. In July 2026, ESSI entered into a $1.7 million settlement with the New York Department of Consumer and Worker Protection over "widespread violations of New York City's Consumer Protection Law" at approximately sixty Extra Space-branded facilities in New York City, including "auctioning off personal property without due process." *See*

https://www.nyc.gov/mayors-office/news/2026/07/mayor-mamdani-secures--1-7-million-from-extra-space-for-new-york; *see also* https://www.nyc.gov/site/dca/news/016-26/dcwp-sues-extra-space-bait-and-switch-pricing-vermin-infested-units-junk-fees-other.

16. Plaintiff is informed and believes, and thereon alleges, that ESMI and ESSLP are and were agents or alter egos of ESSI. As subsidiaries, ESSLP and ESMI operate as mere departments of ESSI. There is also a unity of interest and ownership among Defendants to such an extent that their separate personalities no longer existed and that an inequitable result would follow if their acts were treated as those of separate entities only. As such, Plaintiff refers to Defendants ESSI, ESMI, and ESSLP jointly as "Extra Space" or "Defendants" and each allegation below is made as to each of the three defendants separately and jointly. Furthermore, each Defendant should be held liable jointly and severally for any judgment entered by the Court.

## JURISDICTION AND VENUE

17. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 50 U.S.C. § 4042 because this action arises out of Defendants' violations of the SCRA.

18. Venue is proper in this District because Pvt. Reyes rented the storage unit at issue in this case from an Extra Space facility in Geneva, New York, while she was a resident of Romulus, New York. Both Romulus and Geneva are located within the Western District of New York.

## FACTUAL BACKGROUND

***The Servicemembers Civil Relief Act:***

19. The Servicemembers Civil Relief Act was signed into law by President George W. Bush on December 19, 2003. The SCRA is a revision of the Soldier's and Sailor's Civil Relief

Act of 1940 ("SSCRA"). It builds upon a long history of special protections for servicemembers that traces as far back as the "Stay" laws enacted during the War of 1812. The SCRA was intended to ease the economic and legal burdens caused by military service, specifically for military personnel called to active duty status.

20. The Supreme Court of the United States has held that the SSCRA, the SCRA's predecessor, must be interpreted "with an eye friendly to those who dropped their affairs to answer their country's call." *Le Maistre v. Leffers*, 333 U.S. 1, 6, 68 S. Ct. 371, 373 (1948).

21. SCRA protections are afforded to all active duty servicemembers. National Guard and Reserve personnel qualify for SCRA protections beginning on the day they receive their active duty orders. 50 U.S.C. § 3911(2)(A)(ii).

22. 50 U.S.C. § 3958 of the SCRA prohibits anyone who holds a lien—including, specifically a "lien for storage"—on the property of an active duty servicemember from foreclosing or enforcing that lien without first obtaining a court order. 50 U.S.C. § 3958(a). This restriction applies "during any period of military service of the servicemember and for 90 days thereafter." 50 U.S.C. § 3958(a)(1).

23. The SCRA does not require servicemembers to notify their lienholders that they are on active duty service for the purposes of 50 U.S.C. § 3958. Rather, the requirement to obtain a court's permission before foreclosing or enforcing a lien on an active duty servicemember's property applies automatically during their period of military service and for 90 days thereafter.

24. 50 U.S.C. § 4042 provides that "[a]ny person aggrieved by a violation of" the SCRA may recover monetary damages, costs and attorneys' fees, and "be a representative party on behalf of members of a class or be a member of a class."

***Facts Particular to Plaintiff Desiree Reyes***

25. On or about October 22, 2024, Pvt. Reyes agreed with Extra Space to rent a storage unit at the Extra Space facility located on 3635 Berry Fields Rd, Geneva, NY, 14456 ("the Unit").

26. This agreement granted Extra Space a lien on any personal property Pvt. Reyes stored in the Unit.

27. Extra Space's lien against Pvt. Reyes' property is a "lien for storage" within the scope of 50 U.S.C. § 3958.

28. On or about October 25, 2024, Pvt. Reyes enlisted in the United States Army.

29. Pvt. Reyes rented the Unit from Extra Space for the purpose of storing her property while she served in the Army.

30. Pvt. Reyes was ordered to report to Active Duty Training for a period of 70 days in Fort Sill in Sill, Oklahoma on January 28, 2025.

31. Before leaving for Active Duty Training, Pvt. Reyes went in-person to Extra Space to verify that her autopay was set up. While she was there, she informed an Extra Space representative that she was leaving soon for active duty military service. The representative told her that they would add a note to her file saying that she is in the military.

32. There was and is no requirement under the SCRA for Pvt. Reyes to inform Extra Space that she was going on active duty.

33. Active Duty Training is "military service" under the 50 U.S.C. § 3911(2)(A)(i) of the SCRA, which incorporates the definition of "active duty" from 10 U.S.C. § 101(d)(1), which includes "full-time training duty."

34. Accordingly, Pvt. Reyes began a 70 day "period of military service" for the purposes of 50 U.S.C. § 3958 of the SCRA on January 28, 2025. 50 U.S.C. § 3911(1).

35. Pvt. Reyes remained continuously engaged in full-time duty—which is "military service" under 50 U.S.C. § 3911(2)(A)(i) and 10 U.S.C. § 101(d)(1) —with the Army until September 2025.

36. As of March 2026, Pvt. Reyes believed that she had been paying Extra Space monthly via autopay.

37. On or about March 22, 2026, Pvt. Reyes called the manager of the Extra Space location in Geneva, New York because she was unable to access the Unit.

38. The manager told Pvt. Reyes that Extra Space auctioned off the property she stored in the Unit in February 2025, when Pvt. Reyes was in Active Duty Training—in other words, during her "period of military service" under 50 U.S.C. § 3958.

39. The manager further explained that the property in the Unit was sold because Pvt. Reyes' autopayment stopped working while she was engaged in military service, that Extra Space mailed her a notice that was returned to sender, and that Extra Space did not obtain a court order before selling Pvt. Reyes' property because it did not know she was serving in the military.

40. The sale of Pvt. Reyes' property constitutes enforcement of the storage lien held by Extra Space.

41. Extra Space did not obtain a court order permitting it to sell Pvt. Reyes' property as required by 50 U.S.C. § 3958(a)(1).

42. Extra Space enforced its lien for storage on Pvt. Reyes' property while she was on active duty service without a court order.

43. Extra Space's conduct constitutes a violation of 50 U.S.C. § 3958 of the SCRA.

**CLASS ALLEGATIONS**

44. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and, in the alternative, (c)(4), on behalf of the following Class of servicemembers:

a. Who, before they entered military service as defined by 50 U.S.C. § 3911(2), rented, and stored property in, a storage unit from Defendants ("Property"); and

b. On whose Property Extra Space held a lien;

c. Against whose Property Extra Space enforced its lien during any period of military service of the servicemember or during the 90 days thereafter; and

d. Against whose Property Extra Space enforced its lien without first obtaining a court order within the relevant statute of limitations.

Plaintiff specifically excludes from the class:

a. Defendants' employees, officers, directors, or heirs; and

b. This Court, this Court's direct family members, and this Court's personnel.

45. The SCRA tolls any relevant statute of limitations during a servicemember's period of military service under 50 U.S.C. § 3936(a).

46. Many servicemembers serve on active duty for lengthy periods, including up to several decades.

47. This class action satisfies all requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), including, but not limited to, numerosity, commonality, typicality, adequacy, and predominance.

48. In the alternative, the Court should certify the proposed Class as an issues class with respect to particular issues under Fed. R. Civ. P. 23(c)(4). Such issues include, but are not limited to:

    a. Whether Defendants held a "lien" on Class members' Property under 50 U.S.C. § 3958;

    b. Whether Defendants "enforce[d]" or "foreclose[d]" such liens under U.S.C. § 3958; and

    c. Whether enforcing or foreclosing such liens without a court order constitutes a violation of 50 U.S.C. § 3958.

49. **Numerosity:** Consistent with Fed. R. Civ. P. 23(a)(1), the proposed class is "so numerous that joinder of all members is impracticable."

50. On March 5, 2025, a news release by Extra Space said the following: "Extra Space Storage Now Operates 4,011 stores across 42 states and Washington, D.C. and has properties in 98 of the 100 largest metro areas. In total, Extra Space stores provide 2.8 million units, creating 308 million square feet of rentable space." Extra Space Storage, *Extra Space Storage Celebrates 4,000 Stores Milestone*, (March 5, 2025), https://ir.extraspace.com/news/news-details/2025/Extra-Space-Storage-Celebrates-4000-Stores-Milestone/default.aspx#:~:text=March%205%2C%202025,growth%20comes%20from%20multiple%20sources.

51. Extra Space directly advertises to active duty servicemembers and intentionally targets locations near military bases: "At Extra Space Storage, we know that many active military members and military families are frequently on the move with base assignments, tours of duty, and more. Having to move so often can make it difficult to take all of your personal belongings with you. That's where Extra Space Storage can help! With self storage facilities near military bases across the U.S., we offer convenient, secure, and flexible storage options." *See* https://www.extraspace.com/self-storage/storage-tips/military-storage/.

52. Upon information and belief, Plaintiff's counsel estimate that Extra Space has held thousands, if not tens of thousands, of liens on the property of active duty servicemembers during the relevant class period.

53. Upon information and belief, Plaintiff's counsel estimate that Extra Space has enforced thousands, if not tens of thousands, of those liens without first obtaining a court order in violation of 50 U.S.C. § 3958.

54. The numerosity requirement of Rule 23 is met.

55. **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual class members.

56. Common questions of law or fact that will be dispositive of the claims of the class include, but are not limited to:

    a. Whether Defendants held liens on class members' property;

    b. Whether Defendants enforced those liens;

c. Whether Defendants enforced those liens during class members' periods of military service or within 90 days thereafter;

d. Whether Defendants obtained court orders before enforcing the storage liens they held on class members' property as required by 50 U.S.C. § 3958; and

e. Whether Defendants were unjustly enriched in the amount they profited from enforcing their liens on class members' property.

57. **Typicality:** The claims of Pvt. Reyes are typical of the class claims in that (a) Pvt. Reyes was engaged in a "period of military service" when Extra Space enforced its lien against her property, (b) Extra Space did not obtain a court order before enforcing its lien against her property, and (c) she is owed the damages she has incurred, including the value of her property, as a result of Extra Space enforcing its lien against her property.

58. **Adequacy:** Consistent with Fed. R. Civ. P. 23(a)(4), Pvt. Reyes "will fairly and adequately protect the interests of the class." Pvt. Reyes has no adverse or conflicting interests to the proposed class members. She has retained counsel competent and experienced in complex class action and SCRA litigation and who possess the necessary financial resources to adequately and vigorously litigate this class action.

59. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical. Prosecution of separate actions by individual class members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Extra Space. Furthermore, many class members may have trusted Extra Space's misrepresentation of the SCRA's requirements and, thus, do not know to consult an attorney. In addition, servicemembers

who are class members should not be expected to devote time, energy and attention away from their service to this country by individually litigating their claims against Extra Space. Finally, due to the vastly unequal market power between class members and Extra Space, a class action may be the only way to ensure all class members' claims are adjudicated. Plaintiffs know of no difficulty that would make a class action in this case unmanageable.

**FIRST CAUSE OF ACTION: VIOLATIONS OF THE SERVICEMEMBERS CIVIL RELIEF ACT**

**50 U.S.C. § 3901, *et seq*.**

60. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

61. Defendants violated 50 U.S.C. § 3958 by enforcing the liens they held on active duty servicemembers' property without first obtaining a court order.

62. As a result of Defendants' violations of the SCRA, Plaintiff and the Class are entitled to recover actual damages suffered as a result of losing their belongings, any appropriate equitable or declaratory relief, "all other appropriate relief," as well as costs and attorney's fees. 50 U.S.C. § 4042.

63. Knowingly violating 50 U.S.C. § 3958 is a misdemeanor under 50 U.S.C. § 3958(c).

**SECOND CAUSE OF ACTION: UNJUST ENRICHMENT**

64. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65. The elements a party must prove to prevail on an unjust enrichment claim in New York are "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against

equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (internal citations omitted).

66. The elements of an unjust enrichment claim are substantially similar in the states in which Extra Space conducts business.

67. Extra Space's enforcement of their liens against Plaintiff's and the Class' property in violation of the SCRA satisfies each element of unjust enrichment.

68. As a result of Defendants' unjust enrichment, Plaintiff and the Class are entitled to recover the amount in which Extra Space was unjustly enriched by enforcing their storage liens.

**THIRD CAUSE OF ACTION: CONVERSION**

69. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

70. In New York, "conversion takes place when someone, intentionally and without authority, assumes or exercise control over personal property belonging to someone else, interfering with that person's right of possession. Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. New York Organ Donor Network*, 860 N.E.2d 713, 717 (N.Y. 2006) (internal citations omitted).

71. The elements of a conversion claim are substantially similar in the states in which Extra Space conducts business.

72. Extra Space's enforcement of their liens against Plaintiff's and the Class' property in violation of the SCRA satisfies each element of conversion.

73. As a result of Defendants' conversion, Plaintiff and the Class are entitled to recover the value—plus interest—of the property Extra Space unlawfully converted.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests the following relief from this Court:

1. Certify this case as a Rule 23(b)(2), (b)(3) or, in the alternative, (c)(4) class action on behalf of the proposed class as defined herein;
2. Appoint Plaintiff Desiree Reyes as class representative;
3. Appoint the undersigned counsel as counsel for the class;
4. Grant judgment in favor of Plaintiff and the class for violation of the SCRA, for an award of actual damages suffered as a result of losing their property, any appropriate equitable or declaratory relief, "all other appropriate relief," as well as costs and attorney's fees pursuant to 50 U.S.C. § 4042. ;
5. Grant judgment in favor of Plaintiff and the class for unjust enrichment and order Defendants to disgorge all the profits they earned from wrongfully selling the contents of active duty servicemembers' storage units;
6. Declare Defendants' practice of selling the contents of active duty servicemembers' storage units without first obtaining a court order to be in violation of the SCRA and enter an injunction mandating Defendants to apply for a court order whenever they attempt to sell the contents of an active duty servicemember's storage unit;
7. Award the class prejudgment interest at the applicable rate;
8. Award the class all direct and consequential damages allowed by law;

9. Award the class all appropriate equitable and injunctive relief;

10. Award the class their reasonable costs and attorney fees;

11. Hold Defendants jointly and severally liable for any judgment entered by the Court; and

12. Grant any other further relief that the Court deems appropriate.

**<u>TRIAL BY JURY</u>**

Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7; Fed. R. Civ. P. 38.

Dated: August 7, 2026

Respectfully submitted,

By:*<u>/s/ Brian L. Bromberg</u>*
Brian L. Bromberg
Bromberg Law Office, P.C.
99 Main Street
Nyack, NY 10960
(212) 248-7906
brian@bromberglawoffice.com

Vildan A. Teske (*pro hac vice*)
Lee Owen (*pro hac vice*)
TESKE LAW PLLC
80 South Eight Street, Ste. 900
Minneapolis, MN 55402
Tel: (612) 767-0521
teske@teskelaw.com
owen@teskelaw.com

Seth J. Andrews
The Andrews Firm
43 Court Street, Suite 810
Buffalo, NY 14202
Tel: (716) 906-8685
Email: sandrews@theandrewsfirm.com

*Counsel for Plaintiff and the Putative Class*